MISSISSIPPI LOAN CORPORATION, Plaintiff-Appellee, *v.* ROBERT W. BOYD *et al.*, Defendants-Appellants.

(No. 54904; )

First District—September 15, 1971.

Ron Fritsch, Legal Aid Bureau, of Chicago, for appellants.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

Plaintiff, Mississippi Loan Corporation of Columbus, Mississippi, brought action to recover damages occasioned by the alleged conversion by defendants, Robert W. Boyd and Edna W. Boyd, of certain of their household goods in which the plaintiff had a security interest. The defendants pleaded their discharge in bankruptcy as an affirmative defense. The court sitting without a jury entered a judgment in favor of plaintiff in the amount of $870.74, from which this appeal is taken. Even though plaintiff has not filed a brief in this court, we shall proceed to a consideration of the substantive issues. The primary issue presented for review is whether defendants' abandonment of their household goods, in which the plaintiff had a security interest, amounts to a "willful and malicious" injury to the property of the plaintiff. The issue is formulated by the governing statute, Section 17(a) of the Bankruptcy Act of July 1, 1898, ch. 541, 30 Stat. 544, as amended; 11 United States Code, Section 35 (a)

which states: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (2) are liabiilties * * * for willful and malicious injuries to the * * * property of another * * *." To determine whether defendants' abandonment of their household goods was a willful and malicious injury to the security interest of plaintiff, we need to set out the pertinent facts.

The plaintiff's case was as follows: John G. Hancock is the manager of the plaintiff's office in Columbus, Mississippi. He handled the transaction between Robert W. Boyd and his then wife, Minnie Mae Boyd on October 25, 1963. On that date, plaintiff made a cash loan of $600.00 to the Boyds payable by them to the plaintiff in 24 payments totaling $907.82. At the same time the Boyds executed a chattel deed of trust to secure the note for $907.82, payable to the plaintiff. The deed provided that the Boyds convey to the trustee, one Maxine M. Hulett, certain household goods, the conveyance being conditioned upon their paying the $907.82 to the plaintiff.

John G. Hancock also handled the transaction between Robert W. Boyd and his present wife Edna W. Boyd on May 24, 1966, whereby the plaintiff loaned money to the defendants and a chattel deed of trust was executed by the defendants to secure the amount of $641.84 payable to the plaintiff. Many of the household goods listed in the May 24, 1966, deed were also listed in the October 25, 1963, deed. On June 1, 1966, John G. Hancock discovered that defendants had unexpectedly left Columbus, Mississippi, without notifying anyone, and that the household goods listed in the May 24, 1966, chattel deed of trust had been left by the defendants in the housing project at 2401- 17th Avenue North in Columbus, Mississippi, where the defendants had resided prior to their departure. The Columbus Housing Authority did not confiscate the household goods listed in the May 24, 1966, chattel deed of trust. Some of the household goods were taken by J. C. Mauldin Furniture Company, which had a purchase money lien on certain items. The other household goods were taken by Consolidated Credit Corporation which had an interest in them.

The plaintiff called Robert W. Boyd as a witness under section 60 of the Civil Practice Act. He testified that he had borrowed money or obtained credit from creditors who were later listed in the schedules attached to their petitions in bankruptcy. These creditors, which included plaintiff, Consolidated Credit Corporation and J. C. Mauldin Furniture Company, had security interests in the items of personal property set forth in the chattel deeds of trust executed on October 25, 1963, and on May 24, 1966. On or about May 28, 1966, Robert Boyd left Columbus,

Mississippi, without notifying anyone outside his immediate family. On or about June 6, 1966, his wife Edna Boyd and their children also left Columbus, Mississippi, without notifying anyone. The defendants left all of their property in their apartment, No. 247, at 2410 17th Avenue North in Columbus, Mississippi. They came to Chicago, Illinois, where they have since resided. The defendants have made no payments on the note executed by them on May 24, 1966, in favor of the plaintiff in the total amount of $641.84, which amount includes $425.00 principal and $216.84 interest, insurance and other charges, which was to be paid off in 23 monthly installments of $26.75 each and one additional payment of $26.59.

The defendants' case was as follows: On or about May 28, 1966, defendants were jointly indebted to eight creditors for a total amount of not less than $4,560.00. Payments on several debts had to be made to a Justice of the Peace. Robert W. Boyd was then employed by a Holiday Inn and earned $42.37 each week after taxes; Edna Boyd was not employed. The defendants' income did not allow them to make payments to their creditors and also to provide their eight children with the necessities of life. Every piece of property of the defendants in which the plaintiff had an interest was left in the apartment in Columbus, Mississippi. As a result of the May 24, 1966, refinancing transaction, which occurred four days prior to Robert Boyd's departure for Chicago, the defendants received as cash only $8.91.

On July 24, 1967, the defendants filed petitions in bankruptcy in the United States District Court for the Northern District of Illinois, together with the schedules required to be filed with the petitions. On July 24, 1967, both defendants were adjudicated bankrupt. Plaintiff did not deny that it had due notice and actual knowledge of both bankruptcy proceedings. On September 22, 1967, the defendants were discharged from all debts and claims which, by the Act of Congress relating to bankruptcy, are made provable against their estate.

On the basis of these facts, we must determine whether defendants' abandonment of their household goods, in which plaintiff had a security interest, was a wilful and malicious injury to plaintiff's security interest. The leading case in this area is *Davis v. Aetna Acceptance Co.* (1934), 293 U.S. 328 where Mr. Justice Cardozo, speaking for the U.S. Supreme Court, reversed a judgment in favor of a creditor. In that case, Davis, an automobile dealer, obtained a loan from Aetna to purchase an automobile for later resale to a customer in the ordinary course of business. At the same time that Davis obtained a loan, he executed a chattel mortgage covering the automobile and securing payment of his debt. He then sold the automobile to a customer in the ordinary course of business, but

failed to pay his debt to Aetna. He subsequently filed a petition in bankruptcy and was discharged. Aetna filed an action for conversion of the automobile. The U.S. Supreme Court held that creditor Aetna could not prevail since Davis' discharge in bankruptcy was an affirmative defense. The court's rationale was as follows: "There is no doubt that an act of conversion, if willful and malicious, is an injury to property within the scope of this exception. Such a case was *McIntyre v. Kavanaugh*, 242 US 138, where the wrong was unexcused and wanton. But a willful and malicious injury does not follow as a course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without wilfulness or malice * * * There may be an honest, but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a willful and malicious one." 293 U.S., at page 332.

A host of cases have followed the rationale of *Davis v. Aetna Acceptance Co., supra*. In *X-L Finance Co., Inc. v. Oliver*, 198 So.2d 168 (Ct. App. La. 1967), the chattel mortgage covered a gas stove, a refrigerator, a television set, a table, chairs and a sofa. Defendant discarded these items after they became useless and worthless through normal use. The Appellant Court of Louisiana held that defendant's discharge in bankruptcy was an affirmative deefnse since under *Davis v. Aetna Acceptance Co., supra*, it could not be said that defendant willfully and maliciously disposed of the mortgaged property.

In *Rone Jewelry Co. v. Conley* (1958), 204 Tenn. 275, 319 S.W.2d 245 defendant sent mortgaged property to his mother in another State and later was discharged in bankruptcy. The court held that the defendant debtor's discharge in bankrupty was an affirmative defense, stating, "in this case the defendant merely converted the property by sending it out of the state and this was not a willful and malicious injury to the property of another as comes within this statute (Section 17)." 319 S.W.2d, at page 246.

In *First National Bank of Lansing v. Padjen* (1965), 61 Ill.App.2d 310, 210 N.E.2d 332, Mr. Justice Burke distinguished *Davis v. Aetna Acceptance Co., supra*, since in *Padjen* the *sale* by a debtor of chattel-mortgaged property was not "innocent or technical" and did not arise out of an "honest, but mistaken belief, engendered by a course of dealing * * *."

In the instant case, defendants merely left their household goods in their Mississippi apartment. Unlike the defendant in *Padjen*, defendants did not sell the mortgaged goods. They did not enrich themselves directly and specifically at the expense of the plaintiff. Defendants did not even discard the household goods as was done in *X-L Finance Co., Inc. v.*

*Oliver, supra.* Rather, the household goods left by defendant in their apartment were recovered by two of their eight creditors, both of whom had security interests in the goods.

We do not believe that defendants' actions can be characterized as malicious. Plaintiff has not sustained his burden of proof by showing that deefndants acted with malice and without legal cause or justification.

■■ We hold that defendants' failure to notify plaintiff of their intent to leave Mississippi and the abandonment of their household goods in their Mississippi apartment was not a willful and malicious injury to the security interest of plaintiff. While defendants' financial activities cannot be commended, defendants did leave their personal property in Mississippi with their creditors. If defendants had transported the goods to Illinois, a foreign jurisdiction, plaintiff would surely claim that such a removal of the goods was itself a "willful and malicious" conversion. We find, therefore, that defendants' discharge in bankruptcy bars plaintiff's claim.

■■ We also find that plaintiff failed to prove it was damaged since plaintiff neither alleged nor proved that its interest in the property was superior to the interests of the two creditors who did not recover the property. Plaintiff failed to prove that it was entitled to possession of the household goods, which element is necessary to prove conversion.

For the reasons given, the judgment of the circuit court of Cook County is hereby reversed.

Judgment reversed.

BURMAN and DIERINGER, JJ., concur.